OVERSEAS METAL AND ORE CORPORATION *v.* RAYMOND
H. ROSENFIELD.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued April 17—decided October 10, 1945.

*Simon Bernstein,* for the appellant (defendant).

*Charles Henchel,* for the appellee (plaintiff).

ELLS, J. The plaintiff, a New York corporation, buys ores and residues to be refined or processed for the recovery of certain minerals and metals. At the time in question it did not own or operate a refinery. The defendant owns and operates a plant located at Putnam on the bank of the Quinebaug River, the water of which he uses to generate electric power for the processing of pure metals from scrap metals and residues. The production of cadmium was his principal business. In the latter part of August, 1941, he solicited processing work from the plaintiff, and as a result of subsequent negotiations the parties entered into a written agreement dated September 15, 1941, under the terms of which the plaintiff was to deliver to the defendant at specified times certain residues containing cadmium and zinc, and he was to refine cadmium and electrolytic zinc therefrom. A second contract was executed on September 19, 1941, wherein it was agreed that the plaintiff would deliver at specified times residues containing cadmium and lead and that the defendant would refine cadmium therefrom. At the insistence of the defendant, there was inserted in each agreement a "force majeure clause" reading as follows: "As force majeure will be considered strikes, riots, civil commotions, Act of God, breakdown of machinery, shortage of power; in this case the redelivery of [the material] will be deferred, until such time reasonably required after the cause of force majeure has been removed."

The plaintiff brought this action in four counts. In the first two it is alleged that as a result of the defendant's failure to perform the contracts the plaintiff suffered damage; in the fourth, that because of the defendant's default the plaintiff removed its material

from the premises of the defendant, but found some of it missing, and that the defendant had converted the missing material to his own use. The trial court rendered judgment for the plaintiff on each of these counts, and the defendant has appealed. Judgment was for the defendant on the third count, and the plaintiff has not appealed.

It is conceded that the defendant did not refine or process any of the material furnished by the plaintiff, and consequently that he did not make deliveries upon the dates prescribed in the contracts. As a special defense, the defendant pleaded the force majeure clause and alleged that his machinery is operated by water power, which fact was well known to the plaintiff at the time the contracts were executed; and that during the period the contracts were in force the amount of the rainfall and river flow was "so small as to make it impossible for the defendant to get sufficient water power to operate his machinery to be able to produce and deliver the material at the dates specified in both contracts."

The deliveries of metal provided for in the contracts were to be made in the months of October, November and December, 1941, and January, 1942. During this period there was a serious shortage of water power. The court found that the defendant's plant at all times was in continuous operation on a twenty-four hour basis, and also in effect found that, despite that operation, he did not produce enough material to meet the requirements of the plaintiff's contracts alone. There is no finding that the plant was not operated as efficiently as it should have been. The court did not decide the extent of the shortage; it concluded only that the defendant had not sustained the burden of proving his defense. An assignment of error attacks this conclusion on the ground that it is not supported

by the subordinate facts found. This issue is decisive of the appeal.

It does not clearly appear from the memorandum of decision, or from the finding, what construction the court put upon the phrase "shortage of power," but from its statements made during the trial, contained in the record, it is manifest that it construed "shortage of power" to mean that, in determining whether there was a shortage which would excuse deliveries, other commitments of the defendant were not to be regarded. This question was a definite and vital issue. The court found that, just prior to the making of the contracts, the plaintiff's representative visited the defendant's plant, was shown around, and was told by the defendant that he was engaged in processing metal under other contracts. The plant was then operating, as the plaintiff must have known, under these other contracts. The shortage of power clause was inserted in the contracts by the plaintiff at the insistence of the defendant, and manifestly was for the latter's protection. It cannot reasonably be said that it was in the minds of the parties that all work in progress at the time the material provided for under these contracts was to be delivered to the plant should cease, and the residues under the plaintiff's contracts be given the right of way over everything else. It would not have been feasible to do that, for the inherent nature of the processing then under way would make such cessation almost impossible. In any event, it is unreasonable to believe that such a course was within the contemplation of the parties. On the other hand, if the defendant did not have sufficient water power to enable him to meet all his commitments, it would be equally unreasonable to consider that the parties intended that he might postpone fulfilling his obligations under the

plaintiff's contracts until he had discharged his other commitments.

We must give to the provision "shortage of power" a fair and reasonable interpretation. In *Delaware, L. & W. R. Co.* v. *Bowns*, 58 N. Y. 573, the court had before it for construction a contract which contained a provision releasing the plaintiff from the payment of damages for the nondelivery of certain coal if the business of the company was so interrupted by strikes as materially to decrease the quantity of coal it could mine and the court said (p. 581): "By necessary implication, the plaintiff reserved, and had the right to carry on its mining operations, in the ordinary and usual method, by such means, under such regulations, and paying such wages to workmen, as were under the circumstances usual, reasonable, and just, having respect, not alone to the contract with the defendants, but to the general character, results and necessities, of that branch of business. The agreement was made with respect to the business of the plaintiff as a mining corporation, producing coal for sale, and the nature and incidents of the business may be supposed to have been well understood by both parties. The contract must therefore be construed and have effect with reference to the manner in which such business is usually conducted, and the known contingencies attendant upon operations of the character." Whether there was such a shortage of power as would excuse deliveries as required by the contracts would be a question of a reasonable application of the provision to the situation of the defendant. It would take into account his obligations under the contracts in question, his other commitments known to the plaintiff, usual trade practices, the capacity of his plant and other relevant circumstances. It was incumbent upon him to conduct his business with all the prudence and judg-

ment which one engaged in such a business and situated as he was could reasonably be expected to use. If, and only if, so conducting that business, he found himself unable to fulfill his obligations to the plaintiff because of the small amount of water in the river, would he be excused from meeting those obligations because of a "shortage of power." It is to be noted that, in the force majeure clause, together with the shortage of power are included "strikes, riots, civil commotions, Act of God, breakdown of machinery," a further indication that the parties had in mind conditions affecting the defendant's business as a whole, rather than any individual commitments.

The reasoning we have adopted shows that the trial court erred in failing to give proper consideration to the effect of the defendant's pre-existing commitments, and in refusing to allow him to offer evidence thereon. The basis upon which it found that the defendant had failed to prove his defense was erroneous; the construction which it placed upon the phrase "shortage of power" was too narrow.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion MALTBIE, C. J., BROWN and DICKENSON, Js., concurred; JENNINGS, J., concurred in the result.